Michael P. Thorman, State Bar No. 63008
BONJOUR, THORMAN, BARAY & BILLINGSLEY
24301 Southland Drive, Suite 312
Hayward, CA 94545
(510) 785-8400

Attorneys for defendant
Sufian Al-Khalidi

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT COURT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　　　　Plaintiff.<br><br>vs.<br><br>SUFIAN AL-KHALIDI, et. al.,<br>　　　　　　　　Defendants.<br>_____/ | No.:   CR 07-00126 DLJ<br><br>MOTION TO PRECLUDE EXPERT TESTIMONY<br><br>Date:  September 19, 2008<br>Time:  11:00 a.m. |

**INTRODUCTION**

At the time of this writing, defendants Hassan Swaid, Sufian Al-Khalidi, and Rosemont Wholesale, Inc., among others, are charged in Count One of the Indictment with conspiracy in violation of 18 U.S.C. § 371 to: commit fraud in violation of 18 U.S.C. § 1341 and interstate transportation of stolen goods in merchandise in violation of 18 U.S.C. § 2314. The same defendants and others are also charged in Count Nine of the Indictment with engaging in financial transactions which represented the proceeds of some form of unlawful activity in violation of 18 U.S.C. § 1956(h). In each case, the conspiracy is alleged to have commenced on or about January 2002 and continuing until January 2007.[1]

This case is set for jury trial on September 29, 2008. In Limine motions are to be filed by September 5th for hearing on September 19th. By letter dated September 3rd, received by counsel

---

[1] This prefatory statement is qualified by the words "at this time" because the government has advised counsel of its intent to supercede the present indictment. Defense counsel does not know precisely how a superceding indictment will change the present charges.

1

1  on September 4th, the government provided, among other things, a "notice of expert testimony."
2  A copy of that portion of the letter relating to the notice of expert testimony is attached hereto.
3  　　The reason for this motion is the inadequacy of this notice. As to two of the three
4  purported experts, there is not even minimal compliance with Federal Rule 16(g). As to the third
5  expert, the disclosure provides the witness' qualifications but fails to state the witness' opinions
6  and the basis and reasons for those opinions.
7  　　If trial were not three and a half weeks away, there would be adequate time for the
8  government to attempt compliance. Given the proximity of the trial, it is reasonable for the Court
9  to impose a sanction of precluding the purported expert testimony.

## ARGUMENT AND AUTHORITIES

Federal Rule of Criminal Procedure 16(a)(1)(g) provides that defense counsel is entitled to a written summary of the testimony of any expert witness the government intends to use during its case-in-chief, including "the witness' opinions, the basis and reasons for those opinions, and the witness' qualifications." The Advisory Committee Notes to the 1993 amendments state that the required production under Rule 16 is intended to be comprehensive and "should cover not only written and oral reports, tests, and investigations, but any information that might be recognized as legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts."

In addition to the requirement of an expert witness summary, if the government or its expert has documents, including notes, upon which the expert relied in conducting tests or experiments, such documents must be produced, as its contents are "material to preparing the defense. . ." FRCrP 16(a)(1)(F). Thus, production of notes or other discovery under Rule 16(a)(1)(F) is not alone sufficient to satisfy the requirements of Rules 16(a)(1)(G).

In two fairly recent decisions by District Court in the 9th Circuit, the Court set out specifically what is required to comply with FRCrP 16(a)(1)(G) and Rule 16(a)(1)(F):

> "[C]ompliance with Rule 16 requires that the expert summary shall contain a complete statement signed by the expert of all opinions to be expressed and the basis and reasons for the opinions; any data or information considered by the expert in forming the opinion; the qualifications of the expert, including a list of

2

all publications by the expert within the past 10 years, and a list of all cases for which the expert has testified as an expert in trial or by deposition in the past 4 years." *United States v. Michel-Diaz,* 205 F. Supp. 2d 1155, 1156 (D. Mont. 2002)(Denying government's motion to modify a scheduling order requiring expert disclosures to include these categories of information). Accord, *United States v. W.R. Grace,* 402 F. Supp 2d. 1178, 1181 (D. Mont. 2005).

As the Court in *Michel-Diaz* noted, the "purpose behind the disclosure of expert reports is to ensure effective cross-examination, prevent surprise and avoid delay." *Id*. at 1157. In order to accomplish this end, "more is required than a statement to the effect that such and such examiner will testify" about a topic. *United States v. Wilkerson,* 189 F.R.D. 14, 16 (Mass. 1999); see also *United States v. Capelton,* 199 F.R.D. 25, 29 (D. Mass. 2001) (ordering the government to disclose "copies of any summaries prepared by [its expert] as a result of his analysis of the cases; underlying data relied upon by the expert in forming his opinion; the expert's resume; and a list of cases in which the expert had previously testified).

Based on the wording of Rule 16 and case law, the inadequacy of the disclosures here are patent. There is no statement of the expert qualifications for either Susan Morton or Special Agent Richard Adams. There is no description of witness opinions or the reason for the unexpressed opinions. In the case of Susan Morton, apparently a report is being prepared; how long before trial it will be received, if at all, is not clear. In the case of Richard Adams, we are told what he will testify about but not what his opinions are or the basis and reasons for those opinions. As to each witness, there is absolutely no way for the defense to either prepare for cross-examination or seek other experts for contrary opinions. At this late date, we should not be expected to do so.

More information is given regarding Jerry Biggs, but once again the government describes what Mr. Biggs will "testify about" as opposed to what his opinions are. This is not just a technical deficiency; it has potential significant impact on various aspects of the trial. For example, we are told that Mr. Biggs will compare the prices at which Rosemont bought and sold merchandise with the prices paid by the largest retailers for products directly from the manufacturers. We are not told what that comparison is or what opinion will be expressed based on that comparison. The defense is thus unable to (1) consult with another expert to determine

whether Mr. Biggs' unstated opinion is a reasonable one or (2) object to Mr. Biggs' testimony on this point on the grounds that Mr. Biggs is comparing apples and oranges when he compares prices paid by a close-out wholesaler with prices paid by the largest retailers.

As an example of another area in which the defense is hampered by lack of compliance with Rule 16, the government says that Mr. Biggs will testify about levels of organized retail crime and "will describe the varying levels of organization and the use by fences of false invoices and signed statements from boosters that the products were purchased legitimately." Depending on Mr. Biggs' opinion, this testimony may be irrelevant. If it is the intention of the government to seek an opinion from Mr. Biggs that the practices of Rosemont are similar to other shoplifting organizations with which he is familiar, this testimony is nothing other than propensity evidence under F.R.E. 404(b); in other words, Rosemont is an illegal operation because it has the characteristics of other illegal operations.

The above is not intended to exhaust all the possible objections to our problems with the purported expert testimony in this case. The lack of timeliness of the disclosure and the insufficiency of the disclosure preclude comprehensive analysis. Nonetheless, it is clear that the government has not complied with FRCrP 16.

## CONCLUSION

For the reasons set forth herein, defendant respectfully request this Court preclude the expert testimony the government seeks to offer.

Dated: 9/5/08

Respectfully submitted,

_____ for
Michael P. Thorman

# ATTACHMENT

As I told you orally at the meeting in August, ICE Special Agent Gary Wetzel stated that in 2001 Mossleh Amari and Belay Asfaha both stated that Hassan Swaid did not know the items they provided to him were stolen.

## NOTICE OF EXPERT TESTIMONY

The government notices its intent to call the following expert witnesses at trial:

1.   Ms. Susan Morton, a handwriting expert with San Francisco Police Department.

Ms. Morton will testify regarding the results of her handwriting analysis in this matter. Handwriting exemplars have been sent out for analysis, but I am told that we may not receive the reports for another two weeks. As soon as we receive them we will provide you copies in discovery.

2.   IRS Special Agent Richard Adams, a money laundering expert.

Special Agent Adams will testify about how your clients structured transactions so as to avoid currency reporting requirements at banks.

3.   Mr. Jerry Biggs, an expert on organized retail crime.

Mr. Biggs has twenty-five years of experience in the area of retail theft prevention. Prior to his current position with Walgreens, Mr. Biggs held similar positions with other large retail stores like Wal-mart and Lowe's Hardware. Mr. Biggs has also worked independently as a consultant to retail companies, such as grocery stores, mass retailers, and pharmacies. He has expertise in the areas of loss prevention, safety, and price integrity. His various responsibilities in his twenty-five years in the retail industry have required him to regularly familiarize himself with legitimate and illegitimate sources for products in the market place, as well as legitimate and legitimate prices. This information is necessary for him to determine if the sources of merchandise in the market were derived from legitimate business transactions or were the result of illegal shoplifting or other criminal activity. Occasionally, in the performance of his job he is requested by other divisions of Walgreens' to investigate the legality of companies from which Walgreens is considering purchasing products. These responsibilities require him to investigate the sources from which the product originated and the prices associated with those transactions. Based on these types of investigations, he will be able to compare the prices for which Rosemont Wholesale, Inc., was able to buy and sell its products and the prices that these same products were available from manufacturers and other retailers.

Mr. Biggs has testified as an expert a number of times in state and federal court, including but not limited to *United States v. Adnan Shalash*, 05-56-KSF (Eastern District of Kentucky) and *United States v. Eyad Suleiman* (Western District of Kentucky). I am enclosing transcripts of the prior testimony I have; it describes Mr. Biggs' background and experience as well as his understanding of the various levels of organized retail crime.

Mr. Biggs and representatives from the other victimized companies like Safeway and Target, will testify that based on their experience in the business, they are not aware of any significant source for OTC products or infant formula that involves discount pricing, coupons, or salvage. Mr. Biggs' many years of retail experience has taught him that discount pricing and coupon purchases are typically accompanied by limitations on the quantities available for purchase by each individual customer.

Mr. Biggs will also testify about the store labels and security devices affixed to products that are known to be targeted by organized retail criminals. Mr. Biggs will be reviewing the products seized from the Rosemont warehouse as well as the security devices recovered from Rosemont's trash. As he develops opinions about this case after reviewing the evidence we will provide you with a written summary of that opinion testimony.

Mr. Biggs will be testifying about the following areas:

1. Prices

Mr. Biggs will compare the prices at which Rosemont bought and sold merchandise with the prices paid by the largest retailers for products directly from the manufacturers. Mr. Biggs is familiar with the prices charged by manufacturers and the prices paid by the largest retail stores in the country.

2. Security Devices and Store Stickers.

Mr. Biggs will testify about the various types of store stickers and security devices that are affixed to products, how and when they would be removed legitimately, and whether or not products with active security devices were likely to have been processed through the normal check-out procedures. Mr. Biggs will also testify about the toll-free number listed on Walgreens' stickers and about how messages left at that number are processed.

3. Levels of Organized Retail Crime

Retail stores, like Walgreens, are victimized by three levels of shoplifters (or boosters) and three levels of fences. Mr. Biggs will describe the varying levels of organization and the use by fences of false invoices and signed statements from boosters that the products were purchased legitimately.

## NOTICE OF POTENTIAL RULE 404(b)/INEXTRICABLY INTERTWINED EVIDENCE

The Government hereby gives notice that it may seek to introduce the other crimes, wrongs or acts committed by the defendant which are referenced in the enclosed discovery, either as inextricably intertwined conduct or pursuant to Rule 404(b) of the Federal Rules of Evidence. This may include but not be limited to: